EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Cruz Consulting Group, Inc.<br><br>        Recurrido<br><br>              v.<br><br>El Legado de Chi Chi Rodríguez, S.C., S.E. y otros<br><br>        Peticionarios | Certiorari<br><br>2014 TSPR 103<br><br>191 DPR ____ |

Número del Caso: CC-2013-978


Fecha: 4 de septiembre de 2014


Región Judicial de: Caguas


Abogados de la Parte Peticionaria:

        Lcdo. Manuel Cámara Montull
        Lcdo. Jorge Cámara Oppenheimer



Abogado de la Parte Recurrida:

        Lcdo. Ramón Díaz Gómez




Materia: Ley 208—1995 de Transacciones Comerciales, Instrumentos Negociables – Responsabilidad de agente o representante al firmar pagaré


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Cruz Consulting Group, Inc.<br><br>      Recurrido<br><br>           v.<br><br>El Legado de Chi Chi Rodríguez, S.C., S.E. y otros<br><br>      Peticionarios | CC-2013-978 | *Certiorari* |

Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco

En San Juan, Puerto Rico, a 4 de septiembre de 2014.

Comparecen ante nos el Sr. José Joaquín López Cámara, su esposa, la Sra. María Elena Matos Garratón y la Sociedad de Bienes Gananciales compuesta por ambos (en conjunto, los "peticionarios") y solicitan la revocación de una Sentencia del Tribunal de Apelaciones. Mediante esta se modificó y confirmó una Sentencia del Tribunal de Primera Instancia que declaró Con Lugar una Demanda en cobro de dinero presentada por Cruz Consulting Group, Inc. (en adelante, "Cruz Consulting"), contra los peticionarios y otros.

En esta ocasión nos corresponde resolver si un agente o representante de una tercera persona responde en su carácter personal al firmar un instrumento negociable, específicamente un pagaré, conforme a la Ley Núm. 208-1995, según enmendada, conocida como Ley de Transacciones

Comerciales, *infra*. A continuación exponemos los hechos que dieron génesis a la controversia de autos.

I

El 26 de octubre de 2001, el Sr. Juan Rodríguez Vilá y las corporaciones T/MG Corp., Inc. y Potrero Matos, Inc., ambas representadas por su Presidente, el señor López Cámara, otorgaron una Escritura ante Notario Público con el fin de crear una sociedad especial y en comandita llamada El Legado de Chi Chi Rodríguez Golf Resort (S.C.), S.E. (en adelante, "El Legado"), cuyo propósito era operar y poseer un proyecto turístico que incluiría un hotel y un campo de golf.[1]

El 28 de mayo de 2003, El Legado contrató a Cruz Consulting para que proveyera servicio de cable TV a las unidades del proyecto turístico.[2] Ese mismo día las partes otorgaron otro Contrato mediante el cual El Legado contrató a Cruz Consulting para que proveyera e instalara equipos digitales inteligentes.[3] Un tercer Contrato fue

---

[1] Véase la Escritura Núm. 53 titulada *Deed of Amended and Restated Special Partnership*, Apéndice del recurso de *Certiorari*, págs. 143-167. Anteriormente las mismas partes habían otorgado otras dos (2) escrituras: (1) el 19 de abril de 2001, el señor Rodríguez Vilá, el Sr. José A. Marcano Figueroa y las corporaciones T/MG Corp., Inc. y Potrero Matos, Inc., otorgaron una primera Escritura con el propósito de constituir una sociedad especial en comandita que se llamaría Puerto Rico Golf Resort, (S.C.) S.E, y (2) el 26 de octubre de 2001, las mismas partes, excepto el señor Marcano Figueroa, otorgaron una segunda Escritura a los efectos de remover al señor Marcano Figueroa como socio, pues este deseaba separarse de la sociedad que habían constituido previamente. Véanse las Escrituras Núm. 21 y 52, Apéndice del recurso de *Certiorari*, págs. 121-142.

[2] Véase el Contrato titulado *Contrato para la Provisión de Señal de CATV*, Apéndice del recurso de *Certiorari*, págs. 174-176.

[3] Véase el Contrato titulado *Contrato para la Provisión de Cajas y Módulos para las Casas Inteligentes*, Apéndice del recurso de *Certiorari*, págs. 177-179.

otorgado entre El Legado y Cruz Consulting el 14 de enero de 2004, en el cual Cruz Consulting se obligó, *inter alia*, a proveer material y equipo para instalar servicio de internet y telefonía.[4] En virtud de los Contratos antes mencionados,[5] la cantidad facturada por Cruz Consulting a El Legado ascendió a la suma total de cuatrocientos diecinueve mil quinientos sesenta y cuatro dólares con cincuenta y nueve centavos ($419,564.59).[6]

Posteriormente, las partes otorgaron un Contrato titulado *Mutual Release* con fecha de 10 de enero de 2006, el cual fue firmado por el señor Cruz en representación de Cruz Consulting y los señores López Cámara y Rodríguez Vilá en representación de El Legado. Tratándose en esencia de un Contrato de Transacción entre las partes, las mismas acordaron que El Legado pagaría la suma de doscientos cincuenta mil dólares ($250,000.00) a Cruz Consulting a cambio de que esta renunciara a toda reclamación que pudiera tener contra El Legado y sus socios que se derivara de los servicios de telecomunicaciones objeto de

---

[4] Véase el Contrato titulado *Contrato para la Administración, el Uso y Derecho de Paso de la Infraestructura de Conductos y Registros de Comunicaciones*, Apéndice del recurso de *Certiorari*, págs. 168-173.

[5] Los primeros dos (2) Contratos fueron firmados por el Sr. José Luis Cruz, como representante de Cruz Consulting, y el señor López Cámara y el Sr. Jesús Rodríguez Vilá, como representantes de El Legado. En el tercer Contrato compareció el señor López Cámara como representante de El Legado Home Owners Association, Inc., mientras que el Sr. Jesús Rodríguez Vilá compareció como representante de El Legado. Como de costumbre, el señor Cruz compareció a nombre de Cruz Consulting.

[6] Véase la determinación de hecho número 5 de la Sentencia emitida por el Tribunal de Primera Instancia, Apéndice del recurso *Certiorari*, pág. 101.

los Contratos antes mencionados.[7] Según el Anejo A del *Mutual Release*, los doscientos cincuenta mil dólares ($250,000.00) serían pagaderos de la siguiente manera: (a) ciento veinticinco mil dólares ($125,000.00) pagaderos luego de quince (15) días contados a partir de la fecha del otorgamiento del contrato, y (b) ciento veinticinco mil dólares ($125,000.00) pagaderos el 1 de diciembre de 2006.[8] La segunda suma de ciento veinticinco mil dólares ($125,000.00) fue objeto de un Pagaré suscrito ante Notario Público el 13 de febrero de 2006, con fecha de vencimiento el 1 de diciembre de 2006.[9] Al pie del Pagaré constan la firma del señor Rodríguez Vilá como Socio Gestor ("Managing Partner") de El Legado, así como la firma del señor López Cámara, también como Socio Gestor ("Managing Partner") de la misma entidad jurídica.[10] Igualmente, en la autenticación de las firmas realizada por el Notario Público se identifica a los señores Rodríguez Vilá y López Cámara como Socios Gestores de El Legado.[11]

Debido a la falta de pago de la segunda suma de ciento veinticinco mil dólares ($125,000.00) adeudados por virtud del Contrato titulado *Mutual Release* y el Pagaré

---

[7] Véase el Contrato titulado *Mutual Release*, Apéndice del recurso de *Certiorari*, págs. 180-186.

[8] *Íd.*, pág. 185.

[9] Véase el Pagaré otorgado entre las partes, Apéndice del recurso de *Certiorari*, pág. 272.

[10] *Íd.*

[11] *Íd.*

antes mencionado, el 21 de febrero de 2007, Cruz Consulting presentó una acción civil en cobro de dinero contra El Legado, el señor Rodríguez Vilá, el señor López Cámara y sus respectivas esposas y Sociedades de Bienes Gananciales. El 10 de mayo de 2007, el señor Rodríguez Vilá, su esposa Iwalani Rodríguez y la Sociedad de Bienes Gananciales compuesta por ambos presentaron una Moción en Solicitud de Sentencia Sumaria Parcial mediante la cual argumentaron en síntesis que El Legado es una sociedad especial de responsabilidad limitada y que fue esta la que firmó y se obligó mediante el Pagaré, por lo que el matrimonio Rodríguez-Rodríguez no debía responder por la deuda reclamada en su carácter personal. Por su parte, el 22 de mayo de 2007, los peticionarios presentaron una Moción de Desestimación ante el foro primario y alegaron que El Legado es una sociedad especial con personalidad jurídica propia, por lo que la responsabilidad de sus socios estaba limitada a sus respectivas aportaciones. Además, plantearon que no eran socios de dicha entidad y que quien único se había obligado a satisfacer la suma adeudada lo fue El Legado, por lo que no eran responsables por la obligación reclamada en su carácter personal. Por otro lado, El Legado presentó una Contestación a la Demanda y Reconvención el 24 de mayo de 2007.[12]

---

[12] En su Contestación a la Demanda y Reconvención, El Legado aceptó la existencia del Pagaré y a su vez invocó las doctrinas de los actos propios y enriquecimiento injusto contra Cruz Consulting. *Inter alia*, El Legado también reclamó la nulidad del Contrato de Transacción y el correspondiente Pagaré, ya que su consentimiento en cuanto al *Mutual Release* estaba viciado. Alegó que Cruz Consulting le había

Cruz Consulting se opuso a las solicitudes del matrimonio Rodríguez-Rodríguez y los peticionarios. En cuanto al petitorio de desestimación instado por los peticionarios, alegó que la intención de las partes al otorgar el Pagaré en controversia era que los señores López Cámara y Rodríguez Vilá estaban garantizando la deuda tanto a nombre de El Legado como en su carácter personal, y que de la Escritura donde se constituyó la sociedad especial surge que el señor López Cámara es el Presidente de las dos (2) corporaciones que figuran como socias de El Legado. Por otro lado, en cuanto a la Solicitud de Sentencia Sumaria Parcial presentada por el matrimonio Rodríguez-Rodríguez, Cruz Consulting alegó que tanto el señor Rodríguez Vilá como su esposa eran socios de El Legado, por lo que eran solidariamente responsables por el pago de la deuda contraída por la sociedad especial.

Luego de varios trámites procesales,[13] incluyendo la celebración del juicio en su fondo, el Tribunal de Primera Instancia dictó Sentencia declarando Con Lugar la Demanda presentada por Cruz Consulting. En lo aquí pertinente, el foro primario razonó que "la única explicación legal para explicar que los codemandados se obligaron (...) firmando

---

representado que el valor de los equipos de telecomunicaciones que retendría sería aplicado a la deuda reclamada mediante la figura de compensación, lo cual Cruz Consulting no hizo, además de que el valor de tales equipos era sustancialmente menor al alegado por Cruz Consulting. Apéndice del recurso de *Certiorari*, págs. 390-394.

[13] En una fecha posterior, la Demanda fue enmendada para incluir a las corporaciones T/MG Corp., Inc. y Potrero Matos, Inc., como codemandadas. La Demanda fue enmendada en una segunda ocasión para incluir como demandante al Sr. José Luis Cruz Cruz.

un Pagaré, es que Cruz [Consulting] les requirió una garantía personal y los socios gestores, sus esposas y las Sociedades Legales de Gananciales se la prestaron".[14] Por lo anterior, determinó que todos los codemandados eran responsables por el pago solidario de la deuda reclamada y evidenciada mediante el Pagaré.

Inconformes con la determinación del foro primario, el 18 de junio de 2012, los peticionarios presentaron un recurso de apelación ante el Tribunal de Apelaciones.[15] El 9 de octubre de 2013, archivada en autos copia de su notificación el 16 de octubre de 2013, el foro apelativo intermedio emitió la Sentencia Enmendada Nunc Pro Tunc de la cual se recurre.[16] En su dictamen, el foro apelativo intermedio se limitó a modificar la Sentencia del foro primario a los únicos efectos de eliminar la determinación de solidaridad entre los codemandados López Cámara y Rodríguez Vilá, confirmando así el resto del dictamen del foro primario en toda su extensión.

Insatisfechos, los peticionarios presentaron el recurso de *Certiorari* que nos ocupa el 14 de noviembre de 2013, alegando, entre otros extremos, que el foro

---

[14] Véase la Sentencia emitida por el Tribunal de Primera Instancia en la controversia de autos, Apéndice del recurso de *Certiorari*, pág. 109.

[15] El matrimonio Rodríguez-Rodríguez también presentó un recurso de apelación ante el Tribunal de Apelaciones. Ambos recursos fueron consolidados por el foro apelativo intermedio. Sin embargo, quienes únicos recurrieron ante este Tribunal fueron los peticionarios, por lo que en adelante limitamos nuestra discusión a lo alegado por ellos.

[16] Previo a la enmienda *nunc pro tunc*, la *Sentencia* original del foro apelativo intermedio fue emitida el 30 de agosto de 2013 y notificada el 11 de septiembre de 2013.

apelativo intermedio erró al determinar que el señor López Cámara se había comprometido a responder personal y solidariamente al firmar el Pagaré objeto de controversia.[17] El 28 de marzo de 2014, ordenamos a Cruz Consulting mostrar causa por la cual no debíamos expedir el recurso a los fines de dilucidar únicamente el señalamiento de error antes mencionado. El 23 de abril de 2014, Cruz Consulting cumplió con nuestra Orden y presentó un escrito titulado Solicitud de Desestimación Única y Exclusivamente del Tercer Error Señalado por los Demandados-Apelantes. No obstante, se limitó a discutir asuntos jurisdiccionales y en nada cuestionó los méritos del tercer error señalado por los peticionarios.

Estando en posición para ello, resolvemos.

## II

### A. Los instrumentos negociables y la Ley de Transacciones Comerciales

En innumerables ocasiones hemos reiterado que una ley especial que rige una materia prevalece sobre una ley general. Art. 12 del Código Civil de Puerto Rico, 31 LPRA sec. 12; *S.L.G. Vázquez-Ibáñez v. De Jesús, Vélez*, 180 DPR 387, 398 (2010); *Mun. de San Juan v. Prof. Research*, 171 DPR 219, 236 (2007); *Córdova & Simonpietri v. Crown American*, 112 DPR 797, 800 (1982). En nuestra jurisdicción

---

[17] En adición, los peticionarios señalaron que el foro apelativo intermedio erró al determinar que tanto la señora Matos Garratón como la Sociedad de Bienes Gananciales compuesta por ella y el señor López Cámara respondían por la deuda imputada. Sin embargo, debido a que podemos disponer de la controversia atendiendo únicamente el tercer señalamiento de error, resulta innecesario expresarnos en cuanto a los demás.

los instrumentos negociables están regulados por la Ley Núm. 208-1995, según enmendada, conocida como Ley de Transacciones Comerciales,[18] 19 LPRA sec. 401 *et seq.*[19] La Asamblea Legislativa adoptó la Ley Núm. 208-1995 con el propósito de simplificar, clarificar y modernizar el Derecho que rige las transacciones comerciales, uniformar el Derecho entre las diversas jurisdicciones existentes y permitir la continua expansión de las prácticas comerciales. Sec. 1-102 de la Ley Núm. 208-1995, 19 LPRA sec. 401. *Véase además* la Exposición de Motivos de la Ley Núm. 208-1995, *supra*.

Al igual que ha ocurrido en los cincuenta (50) estados de los Estados Unidos en sus respectivas legislaciones relacionadas a las transacciones comerciales, la Ley Núm. 208-1995 se deriva de ciertos capítulos del Uniform Commercial Code (en adelante, "UCC"). Exposición de Motivos de la Ley Núm. 208-1995, *supra*. Por tal motivo, hemos resuelto que a pesar de que la Sec. 1-103 de la Ley Núm. 208-1995, 19 LPRA sec. 402, dispone que los principios generales del Derecho que imperan en nuestra jurisdicción aplicarán de modo

---

[18] Al momento de su aprobación, la Ley Núm. 208-1995, *supra*, se conocía como la Ley de Instrumentos Negociables. Mediante la aprobación de la Ley Núm. 241-1996, se enmendó la ley para cambiar su título a Ley de Transacciones Comerciales, entre otros asuntos.

[19] En *París v. Canety*, 73 DPR 403 (1952), este Tribunal se enfrentó a una controversia en donde los allí peticionarios acudieron a las disposiciones del Código Civil para argumentar a favor de su contención. No obstante, en dicho caso se determinó que ante un pagaré que cumple con los requisitos para ser un instrumento negociable, era de aplicación la entonces vigente Ley Uniforme de Instrumentos Negociables, Arts. 353-548 del Código de Comercio de 1932, 19 LPRA ant. secs. 1-386, por tratarse de la ley especial que regía la materia. *Íd.*

supletorio, la Sec. 1-102 de la Ley Núm. 208-1995, *supra*, establece que la ley tiene un propósito uniformador que debe regir la resolución de controversias sobre los principios generales del Derecho, aun cuando estos pudieran ser aplicables a una controversia en particular. *COSSEC et al. v. González López et al.*, 179 DPR 793, 811-812 (2010).[20] *Véase además St. Paul Fire & Marine v. Caguas Fed. Savs.*, 121 DPR 761 (1988).

Un instrumento negociable es un documento o un escrito que tiene la cualidad de ser transmitido a cambio de un precio o una contraprestación. M.R. Garay Aubán, *Derecho Cambiario*, Ponce, Ed. Revista de Derecho Puertorriqueño, 1999, pág. 1. Se trata de una clase de documentos de crédito "que incorporan el derecho a cobrar una suma de dinero, y a los cuales el Derecho Cambiario confiere una especial facilidad para circular y otras características peculiares". *Íd.* En términos más sencillos, pueden considerarse como documentos que comprueban una deuda o un crédito y que pueden negociarse conforme a la ley. L.M. Negrón Portillo, *Derecho Cambiario de Puerto Rico (Instrumentos Negociables)*, 2da Ed., San Juan, 1995, pág. 7.

---

[20] En *COSSEC et al. v. González López et al.*, 179 DPR 793 (2010), expresamos que conforme al propósito uniformador de la Ley Núm. 208-1995, *supra*, y el UCC, era necesario acudir a otras jurisdicciones para resolver desde cuándo comienza a correr el término prescriptivo de tres (3) años para las acciones de apropiación indebida de instrumentos negociables que dispone la Sec. 2-118 de la Ley Núm. 208-1995, 19 LPRA sec. 518. Para una postura a favor de acudir a los principios generales del Derecho, véase la Opinión Disidente emitida en el mismo caso. *COSSEC et al. v. González et al.*, *supra*, pág. 815 (Op. Disidente, J. Pabón Charneco).

Por su parte, la Ley Núm. 208-1995 define *instrumento negociable* como

> [U]na promesa o una orden incondicional de pago de una cantidad específica de dinero, con o sin intereses u otros cargos descritos en la promesa u orden, si el mismo: (1) [e]s pagadero al portador o a la orden al momento de su emisión o cuando primero adviene a la posesión de un tenedor; (2) es pagadero a la presentación o en una fecha específica, y (3) no especifica otro compromiso o instrucción por parte de la persona que promete u ordena el pago que no sea el pago del dinero (...).[21] Sec. 2-104(a) de la Ley Núm. 208-1995, 19 LPRA sec. 504(a).

Entre los instrumentos negociables modernos más utilizados se encuentran las letras de cambio o giros, los cheques y los pagarés. *COSSEC et al. v. González López et al., supra*, pág. 799. Hablamos de la existencia de un *pagaré* cuando el instrumento negociable en cuestión se trata de una promesa. Sec. 2-104(e) de la Ley Núm. 208-1995, 19 LPRA sec. 504(e). Ahora bien, una *promesa* significa "un compromiso escrito de pagar dinero suscrito por la persona que se obliga a pagar". Sec. 2-103(a)(9) de la Ley Núm. 208-1995, 19 LPRA sec. 503(a)(9). Añade la misma sección que "[e]l reconocimiento de una obligación por el deudor no es una promesa a menos que el deudor se comprometa a pagar la obligación". *Íd.* De lo anterior se puede colegir que "existe un pagaré cuando hay un compromiso escrito de pagar el dinero suscrito por la

---

[21] Por otro lado, la Sec. 2-104(a) de la Ley Núm. 208-1995 también indica que un instrumento negociable puede contener lo siguiente: "(A) un compromiso o poder para dar, mantener o proteger colateral para garantizar el pago, (B) una autorización o poder al tenedor para admitir sentencia o liquidar la colateral o disponer de ella de otra forma, o (C) una renuncia al beneficio de cualquier ley que exista concediéndole una ventaja o protección al deudor". 19 LPRA sec. 504(a).

persona que se obliga a pagar". *Soto Solá v. Registradora*, res. el 9 de octubre de 2013, 189 DPR ___ (2013), 2013 TSPR 115, pág. 9.

Un pagaré se entiende que es *pagadero en fecha específica* cuando el mismo debe pagarse "luego de transcurrido un período específico de tiempo desde su presentación o aceptación, o *en una fecha o fechas fijas*, o en un momento o momentos de tiempo fácilmente determinables". Sec. 2-108(b) de la Ley Núm. 208-1995, 19 LPRA sec. 508(b). Además, se considera que un pagaré es *pagadero a la orden* cuando el mismo: (a) es pagadero a la orden de una persona identificada, o (b) es pagadero a una persona identificada o a su orden. Sec. 2-109(b) de la Ley Núm. 208-1995, 19 LPRA sec. 509(b).

**B.  El principio de literalidad y la responsabilidad de las partes por el pago de un instrumento**

Debido a que la controversia de autos gira en torno a quiénes están obligados a responder por una deuda evidenciada mediante un pagaré, es de particular importancia que discutamos bajo qué circunstancias una persona queda obligada a responder por las obligaciones contenidas en un instrumento negociable. Para ello, debemos tener presente ciertos principios del Derecho Cambiario.

Conforme a la obra del tratadista Miguel Garay Aubán, el principio fundamental del Derecho Cambiario es el de *la incorporación del derecho al título*. Garay Aubán, *op. cit.*, pág. 9. Este principio significa que "un instrumento

negociable no es una mera evidencia de una obligación que existe, se modifica o se extingue fuera del instrumento", sino que "la obligación representada en el instrumento está inseparablemente unida a éste y se transmite mediante la transmisión del instrumento mismo", siempre y cuando el instrumento se encuentre en manos de un tenedor de buena fe. *Íd.* (Citando a R. Uria, *Derecho Mercantil*, 4ta ed., Madrid, Imprenta Aguirre, 1964, pág. 911). Del mencionado principio fundamental se derivan otros principios del Derecho Cambiario, entre los cuales se encuentra el *principio de literalidad*.[22] *Íd.* (Citando a A. Ruiz de Velasco, *Manual de Derecho Mercantil*, 4ta ed., Bilbao, Ed. Deusto, S.A., 1992, pág. 441).

Cuando hablamos del principio de literalidad, nos referimos a que una persona que está en posesión de un instrumento negociable "tiene derecho a descansar en que el derecho incorporado al instrumento es precisamente lo que está escrito en el instrumento". *Íd.* Este principio se puede manifestar de diferentes maneras: (a) en cuanto a la negociabilidad del instrumento; (b) en cuanto a la redacción de un instrumento sin haber completado sus términos y que es posteriormente completado por un tercero sin autorización para ello; (c) cuando una irregularidad, como una falsificación o una alteración, afecta el derecho declarado en el instrumento, y (d) en cuanto a la

---

[22] Otros principios que se derivan del mencionado principio fundamental lo son el principio de legitimación por la posesión y el principio de abstracción. *Véase* M.R. Garay Aubán, *Derecho Cambiario*, Ponce, Ed. Revista de Derecho Puertorriqueño, 1999, págs. 12-17.

responsabilidad de las personas que firman el instrumento, ya sea en su carácter personal o en capacidad representativa.[23] *Íd.*, págs. 9-12. La vertiente del principio de literalidad en cuanto a la responsabilidad de los firmantes de un instrumento es la que nos atañe, con particular énfasis en lo siguiente:

> [L]a persona que toma un instrumento negociable **tiene derecho a descansar en que la persona o personas que aparecen firmando en el instrumento (y quienes por lo tanto son responsables en alguna forma por su pago) son las personas efectivamente obligadas bajo el instrumento.** Si un firmante no indica claramente en el instrumento que está representando a otra persona, la [Ley de Transacciones Comerciales] establece una presunción (que es incontrovertible cuando el instrumento está en manos de un tenedor de buena fe que no tenga aviso de la representación) de que el verdadero firmante es el representante. Garay Aubán, *op. cit.*, pág. 10. (Citas omitidas y énfasis nuestro).

De manera similar y sin mencionarlo expresamente, el tratadista Basilio Santiago Romero hace alusión al principio de literalidad en cuanto a la responsabilidad de los firmantes en un instrumento negociable al expresar que "aunque la intención del agente sea obligar a su principal y no obligarse él personalmente, **el factor determinante resulta ser lo que aparezca o se desprenda de la firma y**

---

[23] El principio de literalidad lo podemos observar en cuanto al requisito de que un instrumento negociable debe contener una orden o promesa incondicional:

> "[E]l hecho de que un instrumento se suscriba a la misma vez que otros documentos o contratos que condicionan su pago, no afecta la negociabilidad del instrumento, siempre y cuando en el instrumento mismo no se indique expresamente que el derecho a cobrar la suma pagadera está sujeta a los otros documentos o contratos". Garay Aubán, *op. cit.*, pág. 45.

**el documento**".[24]   B. Santiago Romero, *Tratado de Instrumentos Negociables*, 2da ed. rev., Río Piedras, Ed. Universitaria, 1981, pág. 123 (Cita omitida y énfasis nuestro).

El principio de literalidad permea las disposiciones de la Ley Núm. 208-1995, *supra*. Así, la Sec. 2-401(a) de la Ley Núm. 208-1995 dispone que una persona no es responsable por el pago de un instrumento negociable a no ser que esta haya firmado el instrumento, o que se encuentre representada en el instrumento por un agente o un representante que firmó el mismo y cuya firma obliga a la persona representada de acuerdo con lo dispuesto en la ley. 19 LPRA sec. 651(a). Como veremos a continuación, el propio estatuto dispone ciertas reglas a seguir para casos en los que la firma de un instrumento negociable se realizó en capacidad representativa.

En situaciones en las cuales una persona suscriba un instrumento actuando o pretendiendo actuar como representante de otra, ya sea firmando su propio nombre o el nombre del representado, la Sec. 2-402(a) de la Ley Núm. 208-1995 dispone que "la persona representada queda obligada por la firma en la misma medida en que lo hubiera quedado si la firma hubiese sido escrita en un contrato simple". 19 LPRA sec. 652(a). Cuando la persona representada se encuentra obligada por la firma de su representante, la firma del representante se considera

---

[24] Estas expresiones surgieron durante la vigencia de la hoy derogada Ley Uniforme de Instrumentos Negociables, *supra*.

como "la firma autorizada de la persona representada", en cuyo caso "la persona representada es responsable por el instrumento esté o no identificada en el mismo". *Íd.* Esto quiere decir que una persona representada quedaría obligada en un instrumento negociable si, conforme a nuestro Derecho de Obligaciones y la figura del mandato, el representado hubiese quedado obligado por su representante en un contrato regular regido por el Código Civil. Garay Aubán, *op. cit.*, págs. 288-289.

En cuanto a la responsabilidad personal del representante que firma un instrumento negociable, la Sec. 2-402(b) de la Ley Núm. 208-1995 provee unas reglas a seguir **cuando la firma del representante es una firma autorizada de la persona representada**. 19 LPRA sec. 652(b). La primera regla la encontramos en la Sec. 2-402(b)(1) de la Ley Núm. 208-1995, la cual dispone que **"[s]i la forma de la firma demuestra fuera de toda ambigüedad que la firma fue hecha a nombre de la persona representada que está identificada en el instrumento, el representante no es responsable bajo el instrumento"**. 19 LPRA sec. 652(b)(1). (Énfasis nuestro).

Lo anterior significa que existen tres (3) requisitos para que una persona que firma como representante de otra no responda por el pago de un instrumento negociable: (1) la firma del representante debe obligar a la persona representada conforme a nuestros principios generales del Derecho; (2) la forma de la firma del representante debe

indicar fuera de toda ambigüedad, es decir, inequívocamente demostrar que se realizó en carácter representativo, y (3) la persona representada debe estar identificada en el instrumento.[25] De concurrir todos los requisitos, el representante no será responsable por el pago del instrumento negociable.

Por otro lado, la Sec. 2-402(b)(2) de la Ley Núm. 208-1995 dispone que en aquellos casos donde la forma de la firma no demuestra fuera de toda ambigüedad que la firma fue hecha en capacidad representativa, o la persona representada no se encuentra identificada en el instrumento, "el representante es responsable bajo el instrumento ante un tenedor de buena fe que tomó el instrumento sin tener aviso de que el representante no tenía la intención de ser responsable bajo el instrumento". 19 LPRA sec. 652(b)(2). Ante cualquier otra persona -que no sea tenedor de buena fe- "el representante es responsable bajo el instrumento a menos que pruebe que las partes originales no tuvieron la intención de hacerlo

---

[25] En su obra, el tratadista Garay Aubán provee un ejemplo ilustrativo de un caso en el cual la firma del representante demuestra *fuera de toda ambigüedad* que fue hecha a nombre de una persona representada:

> Amanda confiere a Millonario un poder suficiente en Derecho para que éste otorgue en representación de Amanda un pagaré al portador por $100,000. En cumplimiento de su encomienda como representante, Millonario suscribe un documento que lee:

> "Pagaré al portador $100,000"
> [Firma de Millonario]
> Millonario como representante de Amanda". Garay Aubán, *op. cit.*, pág. 290.

responsable bajo el instrumento".[26] *Íd.* Con relación a estas circunstancias donde existe ambigüedad, explica Garay Aubán que ante un tenedor de buena fe, "el representante siempre responde, aunque se pruebe que las partes originales no tuvieron intención de que el representante respondiera". Garay Aubán, *op. cit.*, pág. 291. En otras palabras, bajo estas circunstancias existe una presunción incontrovertible de que el representante responde por el pagaré. *Íd. A contrario sensu*, cuando la firma es ambigua y el representante no se enfrenta ante un tenedor de buena fe, "puede librarse de responsabilidad si prueba que las partes originales no tuvieron la intención de hacer responsable al representante por el instrumento", en cuyo caso estamos ante una presunción controvertible de que el representante es responsable. *Íd.*

Las Secciones 2-401 y 2-402 de la Ley Núm. 208-1995, *supra*, provienen de las Secciones 3-401 y 3-402 del UCC, U.C.C. secs. 3-401 y 3-402 (rev. 2002). Al igual que nuestro estatuto local, la Sec. 3-402(b)(1) del UCC dispone que cuando la firma del representante obliga al representado y demuestra fuera de toda ambigüedad que la misma fue hecha en carácter representativo y a nombre de la persona identificada en el instrumento, **el representante no es responsable bajo el instrumento.** U.C.C. sec. 3-402(b)(1) (rev. 2002). *Véanse* W.D. Warren y

---

[26] La Sec. 2-402(c) de la Ley Núm. 208-1995 establece una norma especial cuando la representación se da dentro del contexto del instrumento negociable conocido como *cheque*. 19 LPRA sec. 652(c).

S.D. Walt, *Payments and Credits*, 8va ed., Nueva York, Foundation Press, 2011, pág. 102 ("If it is clear that an agent is signing on behalf of a named principal, only the principal is bound"); 6B R.A. Anderson, *Uniform Commercial Code*, 3ra ed., 2013, sec. 3-402:7 ("[T]he representative is not liable on the instrument '[i]f the form of the signature shows unambiguously' that the signature was made on behalf of the represented person and that person is identified in the instrument"); 6 W.D. Hawkland, *Uniform Commercial Code Series*, 2013, sec. 3-402:2 ("An authorized representative who signs his own name to an instrument is not personally liable if the form of the signature shows unambiguously that it is made on behalf of a represented person who is identified in the instrument").[27]

### III

Según anticipamos, únicamente atenderemos el tercer error señalado por los peticionarios en su recurso de *Certiorari*, particularmente si incidió el Tribunal de Apelaciones al dictaminar que los peticionarios respondían en su carácter personal y de manera solidaria por la deuda contraída por El Legado mediante el Pagaré.

En apoyo a su contención, los peticionarios arguyen que el señor López Cámara firmó el Pagaré objeto de controversia como Presidente y representante de las corporaciones T/MG Corp., Inc. y Potrero Matos, Inc.,

---

[27] Debido a la claridad de las secciones pertinentes de la Ley Núm. 208-1995, supra, y las secciones homólogas encontradas en el UCC, resulta innecesario acudir a otras jurisdicciones para ver cómo se han interpretado estatutos similares.

quienes son Socias Gestoras de El Legado, por lo que el primero no responde en su carácter personal por el pago de la obligación dineraria contenida en el Pagaré.[28] Además, sostienen los peticionarios que no son ni en ningún momento han sido socios de El Legado y que de ninguno de los documentos firmados entre las partes, incluyendo el *Mutual Release* y el Pagaré, se desprende que los peticionarios se hubieran responsabilizado en su carácter personal por las deudas contraídas por El Legado. Así las cosas, entienden que se equivocó tanto el foro apelativo intermedio como el foro primario al interpretar que la intención del señor López Cámara al otorgar el Pagaré era responsabilizarse en su carácter personal como parte de las garantías ofrecidas a Cruz Consulting. En su intento de persuadirnos a revocar el dictamen recurrido, los peticionarios apoyan su teoría en la doctrina general de los contratos contenida en el Código Civil de Puerto Rico, 31 LPRA secs. 3371-3525, y su jurisprudencia interpretativa.

Es de particular importancia resaltar el hecho de que a pesar de que la controversia de autos gira en torno a quiénes son responsables por el pago de un instrumento negociable, ni los tribunales recurridos ni las partes hacen alusión alguna a la existencia y pertinencia de la Ley Núm. 208-1995, *supra*. Tratándose de documentos a los

---

[28] De igual manera, sostienen que el señor Rodríguez Vilá firmó el Pagaré como representante y Socio Gestor de El Legado, mas no en su carácter personal. Como mencionamos anteriormente, el señor Rodríguez Vilá no es parte en el presente recurso.

cuales nuestro ordenamiento jurídico les confiere unas características especiales, para resolver la controversia de autos primeramente debemos acudir a las disposiciones de la Ley Núm. 208-1995, *supra*, que es la ley especial que rige lo relacionado a instrumentos negociables. Solo en casos donde las disposiciones de la Ley Núm. 208-1995, *supra*, el UCC, o la jurisprudencia de otras jurisdicciones no nos permiten disponer de la controversia, es que acudimos a los principios generales del Derecho y a nuestro Código Civil, *supra*, de manera supletoria, según dispone la Sec. 1-103 de la Ley Núm. 208-1995, *supra*. *Véase COSSEC et al. v. González López et al., supra*.

Así las cosas, como cuestión de umbral debemos examinar el documento objeto de controversia para determinar si se trata de un instrumento negociable conforme a los requisitos dispuestos en la Ley Núm. 208-1995, *supra*. Luego de analizar el mismo, es forzoso determinar que en efecto estamos ante un instrumento negociable: (1) consta por escrito; (2) es pagadero a una persona determinada o a su orden, y (3) contiene una promesa incondicional de pagar una suma determinada de dinero en una fecha específica.[29] Por tanto, es forzoso concluir que el Pagaré cumple con las exigencias de la Ley Núm. 208-1995, *supra*, para ser un instrumento negociable. Además, es evidente que estamos ante un pagaré, ya que se trata de una promesa de pagar una suma de dinero y está

---

[29] Véase el Pagaré, *supra*, nota al calce número 9.

suscrito por la persona que se obliga a pagar. Así las cosas, contrario a las alegaciones de las partes y lo resuelto por los foros recurridos, debemos acudir a las disposiciones de la Ley Núm. 208-1995, *supra*, para resolver la controversia de autos.[30]

Habiendo resuelto que estamos ante un instrumento negociable, procede analizar el Pagaré a la luz de la Sec. 2-402 de la Ley Núm. 208-1995, *supra*, para determinar si los peticionarios se obligaron personalmente por la deuda contraída por El Legado. A pesar de que esta es la primera vez que nos expresamos en cuanto a este particular, la Sec. 2-402 de la Ley Núm. 208-1995, *supra*, es diáfana. Con meridiana claridad dispone que si la firma del representante en el instrumento negociable obliga a la persona representada —asunto que debe ser determinado conforme a la figura del mandato— y la forma de la firma demuestra fuera de toda ambigüedad que la misma fue realizada como representante de una persona representada que está identificada en el instrumento, el representante no es responsable en su carácter personal. Sec. 2-402(b)(1) de la Ley Núm. 208-1995, *supra*. Por el contrario, únicamente en casos en donde existe ambigüedad en cuanto al carácter representativo de la firma que consta en el instrumento, o en casos en que la persona representada no se menciona en el mismo: (1) el representante siempre será responsable ante un tenedor de

---

[30] Véase *París v. Canety*, *supra*, nota al calce número 19.

buena fe, y (2) ante cualquier otra persona, será responsable a menos que pruebe que las partes originales no tuvieron la intención de hacerlo responsable bajo el instrumento. Sec. 2-402(b)(2) de la Ley Núm. 208-1995, *supra*.

En primer lugar, aclaramos que no está en controversia el hecho de que el señor López Cámara es un representante autorizado de El Legado. Así lo reconoció Cruz Consulting al otorgar los Contratos de Servicio y el Contrato de Transacción, documentos en los cuales el señor López Cámara también compareció como representante de El Legado. Más aun, en cuanto al Pagaré, el carácter representativo del señor López Cámara fue admitido por Cruz Consulting en sus escritos pre-sentencia.[31] Quedando

---

[31] Véase la *Contestación a la Reconvención de la Demanda Enmendada* presentada por Cruz Consulting el 29 de octubre de 2008, donde expresaron que "los demandados prepararon y firmaron el Pagaré (...) como representantes de [El Legado]". Apéndice del recurso de *Certiorari*, pág. 431.

Por otro lado, recordemos que la Sec. 2-402(a) de la Ley Núm. 208-1995 remite a la figura del mandato y/o agente al momento de determinar si un representante está debidamente autorizado para comparecer a nombre de otra persona en un instrumento negociable. 19 LPRA sec. 652(a). Es harto conocido que "por ser una corporación un organismo artificial e intangible, existente solamente en correspondencia a la ley, todos sus actos han de celebrarse en representación suya por vía de agentes". *Gasolinas PR v. Registrador*, 155 DPR 652, 665-666 (2001); *Sabalier v. Iglesias*, 34 DPR 352 (1925). Por tanto, es "a través de sus oficiales que, de ordinario, una corporación se obliga, ya sea en virtud de la autoridad que los estatutos corporativos le hayan conferido; por autorización expresa otorgada mediante resolución corporativa; por autorización implícita; por autoridad aparente; o en casos muy limitados, por virtud de cierta facultad inherente a su cargo". *Gasolinas PR v. Registrador*, *supra*, pág. 666; C.E. Díaz Olivo, *Corporaciones*, San Juan, Publicaciones Puertorriqueñas, 2005, págs. 93-97. Es por ello que respetuosamente discrepamos de lo intimado en la Opinión Disidente del Juez Asociado señor Martínez Torres en este caso. Basta con ojear las escrituras y contratos otorgados entre las partes para constatar que el señor López Cámara, como Presidente de las corporaciones Potrero Matos, Inc. y T/MG Corp., Inc., es un agente autorizado con capacidad para comparecer en representación de ellas en todos los negocios objeto de esta controversia, incluyendo el Pagaré, hecho que era conocido por Cruz Consulting y su representante.

establecida la capacidad representativa del señor López Cámara, resta por determinar si la forma de la firma en el Pagaré demuestra fuera de toda ambigüedad que fue hecha en carácter representativo.

Para facilitar nuestra discusión, a continuación transcribimos la sección de las firmas al pie del Pagaré:

```
--------------------------------------
     El Legado de Chi Chi Rodríguez
            Golf Resort

          [Firma]
--------------------------------------
     Por: Juan A. Rodríguez, como
Socio gestor ("Managing Partner") de
El Legado de Chi Chi Rodríguez Golf
          Resort, S.E.

          [Firma]
--------------------------------------
     Por: Joaquín López Cámara, como
Socio gestor ("Managing Partner") de
El Legado de Chi Chi Rodríguez Golf
          Resort, S.E.[32]
```

Se puede observar claramente que las firmas de los señores López Cámara y Rodríguez Vilá fueron realizadas como representantes de El Legado, quien está identificado en el instrumento. Así expresamente e inequívocamente lo dispone el propio Pagaré al indicar que ambos están firmando como Socios Gestores de El Legado.[33] Además, la

---

[32] Acto seguido, el Notario Público que autenticó las firmas en el documento se refirió a los señores Rodríguez Vilá y López Cámara como socios gestores de El Legado. Véase el Pagaré otorgado entre las partes, *supra*, nota al calce número 9.

[33] Las firmas de los señores López Cámara y Rodríguez Vilá como Socios Gestores de El Legado eran necesarias para obligar a la corporación en el Pagaré: "The signature of two of the Managing Partners (one of which must be Rodríguez) shall be required (and shall be sufficient) for all checks, bank drafts, notes, and other debt instruments executed on behalf of the Partnership". *Véase* la Escritura Núm. 53 titulada *Deed of Amended and Restated Special Partnership*, *supra*, nota al calce número 1, pág. 158.

ausencia de ambigüedad fue admitida por Cruz Consulting durante el trámite procesal de la controversia de autos al alegar que "como cuestión de hecho de la faz del mismo Pagaré se desprende que [el señor López Cámara] otorgó el mismo como Socio Gestor de [El Legado]".[34]

Contrario a lo resuelto por los tribunales de menor jerarquía, en este caso no era necesario indagar sobre cuál fue la intención de los peticionarios al momento de otorgar y entregar el Pagaré a Cruz Consulting. Según la Sec. 2-402(b)(2) de la Ley Núm. 208-1995, *supra*, la intención de las partes es pertinente únicamente cuando la firma del representante no demuestra fuera de toda ambigüedad que fue realizada en carácter representativo.[35]

---

[34] Véase la Moción en Oposición a Solicitud de Desestimación presentada por Cruz Consulting el 20 de junio de 2007, Apéndice del recurso de *Certiorari*, pág. 212.

[35] Tampoco es de importancia divagar en cuanto a cuál fue la intención de las partes al consignar la siguiente expresión en el último párrafo del Pagaré: "[e]ste pagaré está garantizado con un escrito bajo juramento consintiendo a que se dicte Sentencia sin la celebración de Juicio, condenando a la suscribiente y/o sus representantes al pago (...)". Véase el Pagaré, *supra*, nota al calce número 9. Según discutido, la Ley Núm. 208-1995, *supra*, remite a la firma del instrumento negociable a la hora de determinar la responsabilidad por el pago del mismo.

En ese sentido también discrepamos de la Opinión Disidente emitida por el hermano Juez Asociado señor Martínez Torres. En esta expresa que la interpretación que realizamos de la Ley Núm. 208-1995, *supra*, es incorrecta debido a que limitamos nuestro análisis a las firmas del Pagaré. Por otro lado, sostiene que las firmas deben analizarse en conjunto con el resto del instrumento, ya que "lo importante es lo que se desprende del contenido de la faz del documento". Véase la Opinión Disidente del Juez Asociado señor Martínez Torres, a la pág. 10. Para justificar su argumento, utiliza una cita de la obra de Basilio Santiago Romero que no tiene el alcance sugerido. Lo que el tratadista explica en su obra es que bajo la vigencia de la derogada Ley Uniforme de Instrumentos Negociables, *supra*, independientemente del estado mental de quien pretendía firmar como representante de otro, lo importante era lo que se desprendía de la firma del instrumento negociable, es decir, de la faz del documento, en casos en los que la persona representada no aparecía mencionada en el mismo. *Véase* B. Santiago Romero, *Tratado de Instrumentos Negociables*, 2da ed. rev., Río Piedras, Ed. Universitaria, 1981, pág. 123. Por tal motivo, la

Por tanto, debido a que la Sec. 2-402(b)(1) de la Ley Núm. 208-1995, *supra*, dispone que si la firma del representante es una firma autorizada de la persona representada y demuestra fuera de toda ambigüedad que la misma fue hecha en carácter representativo y a nombre de la persona identificada en el propio instrumento negociable, el representante no responde. Por consiguiente, resolvemos que los peticionarios no son responsables por el Pagaré objeto de controversia en su carácter personal.

**IV**

Por todo lo anterior, expedimos el auto de *certiorari*, revocamos la Sentencia del Tribunal de Apelaciones y resolvemos que conforme a las disposiciones de la Ley Núm. 208-1995, *supra*, que es el estatuto aplicable a la controversia de autos, los peticionarios no son responsables por el pago del Pagaré en su carácter personal. Por consiguiente, El Legado es quien único se obligó a responder por la deuda objeto del Contrato de Transacción y el Pagaré. Tratándose de una sociedad especial con personalidad jurídica independiente de sus socios, entiéndase el señor Rodríguez Vilá y las corporaciones TM/G Corp., Inc. y Potrero Matos, Inc., estos solo responden en caso de que los activos de El

---

misma cita fue utilizada en el cuerpo de esta Opinión Mayoritaria como una manifestación del principio de literalidad. De hecho, acto seguido, Santiago Romero discute otras disposiciones de la antigua ley que también remitían a la firma a la hora de determinar la responsabilidad de un representante. *Íd.*, págs. 124-130.

Legado no alcancen para cubrir lo adeudado y de manera limitada hasta el monto de sus respectivas aportaciones de capital.[36]

Se dictará sentencia de conformidad.


Mildred G. Pabón Charneco
Jueza Asociada

---

[36] En cuanto a la responsabilidad limitada de los socios de una sociedad especial, *véase* el Art. 1589 del Código Civil, 31 LPRA 4372. *Véanse además Quiñones Reyes v. Registrador*, 175 DPR 861, 875-876 (2009); *Marcial v. Tomé*, 144 DPR 522, 544-545 (1997). De otra parte, surge del expediente que El Legado está acogido al Capítulo 11 de la Ley de Quiebras, por lo que el pago de la deuda reclamada dependerá de los procedimientos ante el Tribunal de Quiebras para el Distrito de Puerto Rico. Aunque no fue alegado por las partes, aclaramos que para efectos de la controversia que hoy resolvemos no es de aplicación la paralización automática de los procedimientos que provee la Sec. 362 del Código de Quiebras, 11 U.S.C. sec. 362. Salvo circunstancias excepcionales, la protección que provee la paralización automática únicamente aplica a procedimientos contra el deudor que está acogido a la quiebra, mas no contra codeudores solidarios. *Peerless Oil v. Hnos. Torres Pérez*, 186 DPR 239, 256-259 (2012). En este caso, quien único está en quiebra es El Legado. Además, no surge del expediente que el Tribunal de Quiebras hubiese hecho extensiva la protección de la paralización automática a los peticionarios.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Cruz Consulting Group, Inc.<br><br>    Recurrido<br><br>        v.<br><br>El Legado de Chi Chi Rodríguez,<br>S.C., S.E. y otros<br><br>    Peticionarios | CC-2013-978 | *Certiorari* |

SENTENCIA

En San Juan, Puerto Rico, a 4 de septiembre de 2014.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, expedimos el auto de *certiorari*, revocamos la Sentencia del Tribunal de Apelaciones y resolvemos que los peticionarios no son responsables por el pago de la deuda reclamada en su carácter personal.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Martínez Torres disintió con opinión escrita.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Cruz Consulting Group, Inc.<br><br>    Recurrido<br><br>    v.<br><br>El Legado de Chi Chí Rodríguez, S.C., S.E.; Juan A. Rodríguez Vila, su esposa Iwalani Rodríguez y la Sociedad Legal entre ambos; Joaquín López Cámara, su esposa Mariela Matos y la Sociedad Legal entre ambos<br><br>    Peticionarios | CC-2013-0978 | |

Opinión disidente emitida por el Juez Asociado señor MARTÍNEZ TORRES.

En San Juan, Puerto Rico, a 4 de septiembre de 2014.

La Opinión del Tribunal se limita a atender si el Sr. Joaquín López Cámara se comprometió a responder en su carácter personal al firmar un pagaré que garantizaba una deuda contraída por El Legado de Chi Chí Rodríguez ("El Legado") mediante un contrato de transacción titulado *Mutual Release*. En su particular, se concluye que ese pagaré fue firmado por el señor López Cámara en representación de El Legado, por lo que no es responsable por la deuda en su carácter personal. Disiento respetuosamente de esa determinación por entender, al igual que los foros recurridos, que la firma del señor López Cámara en el pagaré es ambigua por lo que él responde por la obligación contraída bajo ese documento.

I

Entre el 28 de mayo de 2003 y el 14 de enero de 2004, Cruz Consulting Group, Inc. ("Cruz Consulting") se obligó mediante tres contratos a proveer servicios de cable TV e instalar servicios de internet y teléfono, entre otros, a El Legado. Luego de que se realizaran las labores pactadas, el 31 de agosto de 2005, Cruz Consulting le solicitó a El Legado la cantidad de $419,564.59 para el pago de los servicios. Sin embargo, El Legado se negó a reconocer que esa era la cantidad adeudada. Sentencia del Tribunal de Primera Instancia, pág. 2.

El 7 de noviembre de 2005, Cruz Consulting y El Legado se reunieron junto con sus respectivas representaciones legales y acordaron transar el monto de la reclamación por $250,000, los cuales se pagarían en dos plazos. Para ese momento, los socios gestores de El Legado eran el Sr. Juan Rodríguez Vilá y las corporaciones T/MG Corp., Inc. y Potrero Matos, Inc., representadas por el señor López Cámara. Por su parte, el Sr. José L. Cruz Cruz representaba a Cruz Consulting. Como conocía la situación económica de El Legado, el señor Cruz Cruz exigió en esa reunión que los señores López Cámara y Rodríguez Vilá se obligaran personalmente como condición para aceptar la oferta de transacción. Sentencia del Tribunal de Apelaciones, pág. 15. Las expresiones del señor Cruz Cruz fueron las siguientes:

> Ahí yo fui bien enfático con él y le dije:
> "Okey, yo podría aceptar el pagaré, pero

conociendo la situación de El Legado, que no le está pagando a nadie, yo necesito que los socios se hagan responsables por esa cantidad. O sea, yo necesito que ellos estén en su carácter personal en ese pagaré". Y él me dijo: "Bueno, pues vamos a hacerlo así". Íd.

El 10 de enero de 2006, ese acuerdo se recogió en un contrato de transacción que titularon *Mutual Release* y que firmaron todas las partes. En ese contrato se incluyó un lenguaje que especifica que los señores López Cámara y Rodríguez Vilá comparecían en ese contrato en representación de El Legado. Apéndice, pág. 180. Parte del contrato lee como sigue: "**OF THE SECOND PART: El Legado de Chi Chi Rodríguez Golf Resort, S.E.**, a Puerto Rico Special Partnership (hereinafter, the "Partnership"), represented in this act by its Managing Partners, Joaquin Lopez, and Mr. Juan ("Chi Chi") Rodríguez". Íd. En ese acuerdo, El Legado se comprometió a realizar un primer pago de $125,000 a los 15 días de firmar el *Mutual Release* y un segundo pago por la misma cantidad a pagarse el 1 de diciembre de 2006.

En la última página del *Mutual Release* aparecen las firmas de las partes. En el lado izquierdo aparece el nombre "CRUZ CONSULTING GROUP, CORP" con un espacio debajo donde consta el nombre y firma del señor Cruz Cruz. Al lado derecho se lee "EL LEGADO DE CHI CHI RODRÍGUEZ GOLF RESORT, S.E." con dos espacios debajo— el primero con la firma y nombre del señor Rodríguez Vilá y el segundo con la firma y el nombre del señor López Cámara. Apéndice, pág. 184.

El Legado cumplió con el pago de $125,000 en el primer plazo. Los restantes $125,000 se garantizaron con un pagaré firmado ante notario y con fecha de vencimiento de 1 de diciembre de 2006, establecida en el *Mutual Release*. El último párrafo de ese pagaré contiene una cláusula en la que se condena a "la suscribiente **y/o sus representantes** al pago del principal, intereses, gastos y honorarios de abogado…" Apéndice, pág. 189. En la parte inferior de ese pagaré hay tres espacios para las firmas de las partes. El primer espacio corresponde a El Legado y está en blanco, es decir, no hay ninguna firma de sus socios o representantes en ese espacio. En el segundo espacio constaba el nombre y la firma del señor Rodríguez Vilá, identificado como socio gestor ("Managing Partner") de El Legado. Por último, el tercer espacio correspondía al señor López Cámara, identificado también como socio gestor ("Managing Partner") de El Legado, y contenía su firma. Cabe destacar, sin embargo, que el señor López Cámara es el representante de las dos corporaciones que son socias gestoras de El Legado junto al señor Rodríguez Vilá— T/MG Corp., Inc. y Potrero Matos, Inc.— y en todos los negocios jurídicos en los que El Legado fue parte, el señor López Cámara compareció y firmó como representante de ellas, mas no como representante de El Legado. Sentencia del Tribunal de Primera Instancia, pág. 3. En otras palabras, y como testificó durante la etapa inicial

de los procedimientos, el señor López Cámara no es socio gestor de El Legado.

Eventualmente, El Legado no satisfizo el pago correspondiente al segundo plazo para la fecha acordada. El incumplimiento de El Legado llevó a Cruz Consulting a presentar la demanda que originó la controversia que hoy nos ocupa.

El Tribunal de Primera Instancia declaró con lugar la demanda que presentó Cruz Consulting y condenó a los señores López Cámara y Rodríguez Vilá, sus esposas y sus respectivas sociedades legales de gananciales al pago solidario de la deuda. Basó su determinación en lo siguiente:

> Estando claro el acuerdo transaccional otorgado el 10 de enero de 2006 entre el Legado y Cruz, [¿]cuál era la necesidad o causa para suscribir un Pagaré por la misma cuantía y en el mismo plazo del acuerdo transaccional a que se obligaron El Legado y Cruz[?] Ninguna. El Legado ya se había obligado al pago de $250,000.00 para finiquitar el asunto de los alegados respectivos incumplimientos de las Partes con los 3 contratos. La única explicación legal para explicar que los co-demandados se obligaron por la suma de $125,000.00 firmando un Pagaré, es que Cruz les requirió una garantía personal y los socios gestores, sus esposas y las sociedades Legales de Gananciales se la prestaron en caso de incumplimiento de la Sociedad Especial y en Comandita del Legado. Sentencia del Tribunal de Primera Instancia, pág. 10.

Inconformes, El Legado, los señores López Cámara y Rodríguez Vilá, sus esposas y sus respectivas sociedades de gananciales presentaron un recurso de apelación ante el Tribunal de Apelaciones. Ese foro modificó la sentencia

emitida por el Tribunal de Primera Instancia a los únicos efectos de eliminar la solidaridad entre las partes y confirmó el resto de la sentencia. El foro apelativo se basó en el mismo análisis que el foro primario para llegar a su conclusión. Además, estableció que como el espacio correspondiente a El Legado de Chi Chí en el pagaré está en blanco, "[e]llo se traduce en que El Legado de Chi Chí, sencillamente, no se comprometió en ese documento". Sentencia del Tribunal de Apelaciones, pág. 28. Añadió que

> tuvo toda la razón el TPI cuando, en corte abierta, dejó establecido que el hecho de que el documento identifique a los apelantes como socios gestores de El Legado de Chi Chí, no excluye la posibilidad de que éstos se hayan obligado en su carácter personal. Se trata de una mera identificación, pero no equivale a decir que se firma en representación de la sociedad, tal y como claramente se especificó en el "Mutual Release". Íd.

Insatisfechos, el señor López Cámara, su esposa María Elena Matos y la sociedad legal de gananciales compuesta por ambos acudieron ante nos mediante una petición de certiorari. Alegan que el foro apelativo intermedio erró al determinar que el señor López Cámara responde en su carácter personal y al determinar que la sociedad legal de gananciales también quedó obligada. El señor Rodríguez Vilá no recurre de la sentencia del Tribunal de Apelaciones. Por lo tanto, únicamente atenderemos el planteamiento de los aquí peticionarios.

II

Como bien resuelve la mayoría de este Tribunal, nos encontramos ante un instrumento negociable, en específico

un pagaré, al que le es aplicable la Ley Núm. 208-1995, según enmendada, conocida como Ley de Transacciones Comerciales. 19 LPRA sec. 401 *et seq.* Un instrumento negociable es un documento o escrito que puede ser transmitido con facilidad con el derecho a cobrar una suma de dinero. M.R. Garay Aubán, <u>Derecho Cambiario de Estados Unidos y Puerto Rico</u>, Editorial Revista de Derecho Puertorriqueño, 1999, pág. 1. La Sec. 2-104 de la Ley Núm. 208-1995, 19 LPRA sec. 504, define un instrumento negociable como una promesa u orden incondicional de pagar una cantidad específica de dinero, pagadero al portador o a la orden de una persona identificada, pagadero a la presentación o en fecha específica, y no contiene ningún otro compromiso o instrucción. Asimismo, el pagaré es una clase de instrumento negociable que contiene una promesa de pago. Sec. 2-104(e) de la Ley Núm. 208-1995, 19 LPRA sec. 504.

Por su parte, la Sec. 2-401 de la Ley Núm. 208-1995, 19 LPRA sec. 651, establece que para que una persona incurra en responsabilidad bajo un instrumento negociable tiene que haber firmado el instrumento o estar representada por un agente o representante que haya firmado el documento obligándola.

Para que una firma de un representante obligue al representado debe ocurrir lo siguiente: (1) que la firma sea una "firma autorizada" de la persona representada; (2) que la forma de la firma demuestre fuera de toda

ambigüedad que fue hecha a nombre de la persona representada; y (3) que la persona representada esté identificada en el documento. Sec. 2-402 de la Ley Núm. 208-1995, 19 LPRA sec. 652. De estar presentes esos tres supuestos, el representante que firma no responde por el instrumento. De lo contrario, el que firmó como representante será responsable de la obligación en el instrumento ante un tenedor de buena fe que tomó el instrumento sin tener conocimiento de que el representante no firmó con la intención de hacerse responsable. Íd. Ante toda otra persona, el representante no será responsable solo si logra probar que las partes originales no tuvieron la intención de obligarlo. Íd.

Al obligar al supuesto representante a hacerse responsable por el instrumento, se evita que circulen instrumentos bajo los cuales ninguna persona tenga responsabilidad. Garay Aubán, op. cit., pág. 292. Por el contrario, si se dispusiera que el supuesto representante no es responsable bajo el instrumento, no habría persona alguna que respondiera por él. Íd. Ello permitiría que circulen instrumentos fútiles que no constituyan una garantía real por no imponer responsabilidad a persona alguna. Eso responde a que, "cuando un cesionario adquiere el documento con la firma de una persona que no indica que representa a otro, el cesionario está confiando en la solvencia y en la responsabilidad **de esa persona** sin

considerar que el verdadero responsable es otra persona". Íd., pág. 291.

Por otra parte, imponer responsabilidad a una persona cuya firma no aparece en el documento ni que se puede desprender del documento que está siendo representada crearía una situación ideal para perpetrar fraudes, ya que "podría resultar que el otorgante de un documento cuando le fuera solicitado el pago de la obligación alegara que firmó la misma como representante de otra…". B. Santiago Romero, Tratado de Instrumentos Negociables: Ley Uniforme de Instrumento Negociables de Puerto Rico y Ley del Código Uniforme de Comercio de los Estados Unidos, 2da Ed., Editorial Universitaria, 1981, pág. 123.

Es por ello que "[e]l hecho de si el representante indica o no su calidad representativa en el instrumento es muy importante para determinar si el representante **también** está obligado a pagar el instrumento". (Énfasis en el original.) Garay Aubán, op. cit., pág. 289. Aun cuando la intención del que firma sea obligar a la persona representada y no obligarse él personalmente,

> el factor determinante resulta ser lo que aparezca o se desprenda **de la firma y el documento.** En otras palabras, lo importante constituye la intención objetiva o la intención que se desprende **del contenido de la propia faz del documento** en sí, y no lo que tuvo en mente el firmante al otorgar el documento. (Énfasis suplido.) Santiago Romero, op. cit., pág.123.

Además, la Sec. 2-117 de Ley Núm. 208-1995, 19 LPRA sec. 517, permite que otros acuerdos suplementen el instrumento al disponer lo siguiente:

Sujeto al derecho aplicable referente a la exclusión de prueba de acuerdos contemporáneos o previos, la obligación contraída por una parte en un instrumento de pagar el instrumento podrá modificarse, suplementarse o anularse por un acuerdo separado entre el deudor y la persona con derecho a exigir el cumplimiento del instrumento, si el instrumento se emite o la obligación se incurre confiando en el acuerdo o como parte de la misma transacción que da motivo al acuerdo.

## III

La Opinión del Tribunal hace una interpretación errónea de la Ley Núm. 208-1995, supra, al sugerir que únicamente debemos examinar las firmas del pagaré en cuestión. Esa ley dispone que, para que el representante no responda bajo el instrumento, "la forma de la firma" debe demostrar fuera de toda ambigüedad que fue hecha a nombre de la persona representada. Sec. 2-402 de la Ley Núm. 208-1995, 19 LPRA sec. 652. La mayoría de este Tribunal se enfoca únicamente en esa cláusula y, en su análisis, nos remite únicamente a las firmas en el pagaré, obviando el contenido del instrumento.

Ese análisis no es suficiente para interpretar en qué carácter firmó el señor López Cámara en el pagaré. Como ya mencionamos, lo importante es lo que se desprende del contenido de la faz del documento. Santiago Romero, op. cit., pág. 123. Sin duda eso incluye las firmas en el documento, pero no se limita a ellas. Lo anterior supone que al analizar la forma de la firma, como indica la Sec. 2-402 de la Ley Núm. 208-1995, 19 LPRA sec. 652, el análisis se haga en contexto con el contenido del

documento. Las firmas no pueden interpretarse en el vacío. De lo contrario, estaríamos creando un mecanismo ideal para emitir documentos fraudulentos. Al firmar un documento, las partes confían en el contenido de sus cláusulas y en que el texto del documento recoja los acuerdos correctamente y según pactados.

En este caso surgen dudas respecto a quién responde por la cantidad adeudada. La realidad es que estamos ante un instrumento ambiguo. Esa ambigüedad surge al analizar las firmas junto con el contenido del pagaré.

El contenido del pagaré que firmaron las partes dispone que "la suscribiente y/o sus representantes" quedan obligados al pago de la deuda. Apéndice, pág. 189. Esa disposición pretende imponer responsabilidad a los representantes de El Legado. Difiero de la nota al calce número 34 de la Opinión del Tribunal porque ese hecho es pertinente para el análisis de esta controversia. Es por eso que, al examinar la forma de las firmas, el análisis debe hacerse a la luz de esa disposición.

La firma del señor López Cámara aparece acompañada de su nombre y una identificación "como socio gestor" de El Legado. Lo mismo ocurre con la firma del señor Rodríguez Vilá. Coincido con la determinación de los foros inferiores de que la firma del señor López Cámara en el pagaré como socio gestor es una mera identificación. Ahora bien, esa identificación trae consigo varios problemas.

Primero, el pagaré dispone expresamente que se condena a los representantes al pago de la deuda y el señor López Cámara pretendía identificarse como representante de El Legado al firmar el instrumento. Sin embargo, se identificó como socio gestor de El Legado. Esto hace que su firma sea ambigua porque no corresponde al texto de la cláusula que impone responsabilidad a los representantes. Ser un representante no equivale a ser un socio. En la nota al calce número 30 de la Opinión del Tribunal se atribuye gran peso al hecho de que Cruz Consulting expresó que "los demandados prepararon y firmaron el Pagaré (…) como representantes de [El Legado]". Eso no puede servir de base para determinar que el señor López Cámara firmó exclusivamente en representación de El Legado. El señor Cruz Cruz hizo esa aseveración porque confió en el texto del pagaré que expresa que los "representantes" serán responsables del pago. Al analizar ese texto con la firma del señor López Cámara como socio gestor surge confusión sobre a quién pretendían adjudicar responsabilidad los comparecientes en el instrumento.

Segundo, del expediente se desprende que el señor López Cámara expresó durante su testimonio en el foro primario que no es socio de El Legado. <u>Sentencia del Tribunal de Apelaciones</u>, pág. 12. De igual forma, el señor Rodríguez Vilá admitió que el señor López Cámara no es socio. <u>Íd.</u>, pág. 10. El señor López Cámara meramente representaba a las corporaciones T/MG y Potrero Matos, las

cuales sí eran socias de El Legado. Este hecho es pertinente ya que el señor López Cámara firmó el pagaré como "socio gestor" de El Legado cuando en realidad no es su socio. Su firma tampoco se hizo en representación de las corporaciones que sí son socias de El Legado pues, como mencionamos, uno de los requisitos para que la firma de un representante obligue al representado es que este último aparezca identificado en el documento. Sec. 2-402 de la Ley Núm. 208-1995, 19 LPRA sec. 652. En ninguna parte del pagaré se menciona a T/MG Corp., Inc. y Potrero Matos, Inc. Es por eso que no podemos concluir que la firma del señor López Cámara se hizo como representante de esas corporaciones. Tampoco podemos concluir que firmó como socio gestor de El Legado porque él no es socio. Entonces, ¿por quién firmó el señor López Cámara en el pagaré? No está claro. Esa ambigüedad causa que por ley responda personalmente el señor López Cámara, lo que coincide con la prueba de intención que se presentó en el Tribunal de Primera Instancia.

Al respecto, existe una determinación de hechos que indica que el 7 de noviembre de 2005 se llevó a cabo una reunión en la que Cruz Consulting aceptó una oferta de transacción hecha por El Legado a cambio de que los socios gestores de El Legado garantizaran la deuda personalmente. Sentencia del Tribunal de Primera Instancia, pág. 2. El foro primario le dio credibilidad al testimonio del señor Cruz Cruz, quien testificó que el pagaré en controversia

se emitió como garantía personal de la cantidad que se acordó en el *Mutual Release*.

Como conocemos, la apreciación de la prueba del foro primario merece gran deferencia. In re Rosado Nieves, 189 DPR 259, 270 (2013); Dávila Nieves v. Meléndez Marín, 187 DPR 750 (2013); Colón v. Lotería, 167 DPR 625, 659 (2006). En ausencia de error manifiesto, pasión, prejuicio o parcialidad, los tribunales no deben intervenir con las determinaciones de hecho y adjudicación de credibilidad que hace un juzgador en el Tribunal de Primera Instancia, ya que es este quien tuvo la oportunidad de escuchar la prueba testifical y apreciar el "demeanor" de los testigos y quien está en mejor posición para aquilatar la prueba. In re Rosado Nieves, supra.

Interpretar la Ley Núm. 208-1995, supra, como lo hace la Opinión del Tribunal, perjudica los intereses de una parte a quien el foro primario, que tuvo la prueba ante sí, le dio entera credibilidad. Además, abre un camino al fraude y al perfeccionamiento de instrumentos negociables imprecisos y engañosos. La propia ley establece que sus cláusulas se deberán interpretar y aplicar liberalmente. Sec. 1-102 de la Ley Núm. 208-1995, 19 LPRA sec. 401. Por tal razón, al examinar la forma de la firma en un pagaré no debemos limitarnos a la estampa que hace una persona para identificarse, pues el concepto de firmar un documento es un acto que simboliza aceptación y conformidad con todo lo que se expresa allí.

¿Cómo identificar la ambigüedad de una firma si no es estudiándola en conjunto con el texto al que se está consintiendo? La forma en que se firma corresponde a la manera en que el firmante compareció en el documento. El modo más eficiente de analizarla es a la luz del contenido del resto del documento. Si no, ¿de qué valen las clausulas introductorias que establecen la calidad en la que comparecen las partes en el documento si solo se va a acudir a las firmas de las partes como determina hoy el Tribunal?

Bajo ese análisis, el señor López Cámara expresó su conformidad con lo establecido en el pagaré al firmarlo. Parte de lo allí establecido era que "la suscribiente y/o sus representantes" serían responsables del pago del principal, intereses, gastos y honorarios de abogado. Ello, unido al hecho de que el señor López Cámara firmó identificándose como socio gestor de El Legado cuando no lo es, y que tampoco firmó como representante de T/MG Corp., Inc. y Potrero Matos, Inc., apunta a que existe ambigüedad en la forma de las firmas en el pagaré. Como consecuencia, la firma no cumple con todos los requisitos que impone la Sec. 2-402 de la Ley Núm. 208-1995, 19 LPRA sec. 652, para que se obligue a un representado. No podemos concluir que la forma de la firma del señor López Cámara demuestra fuera de toda ambigüedad que fue hecha a nombre de El Legado o sus socias gestoras (T/MG Corp., Inc. y Potrero Matos, Inc.). Por lo tanto, sujeto a lo

dispuesto en la Ley Núm. 208-1995, supra, el señor López Cámara, quien firmó el pagaré, es responsable bajo el instrumento ante el señor Cruz Cruz, quien es un tenedor de buena fe.

IV

Resuelto lo anterior, resta determinar si la firma del señor López Cámara obligó a la Sociedad Legal de Gananciales compuesta por él y su esposa, la señora Matos. Entiendo que sí. El artículo 1308 del Código Civil de Puerto Rico, 31 LPRA sec. 3661, dispone que serán carga de la sociedad de gananciales "[t]odas las deudas y obligaciones contraídas durante el matrimonio por cualquiera de los cónyuges". Esas deudas deben servir a un interés de la familia y no pueden traer consigo un ánimo fraudulento o la intención de perjudicar a uno de los cónyuges. WRC Properties, Inc. v. Santana, 116 DPR 127, 135 (1985). Es decir, tiene que contraerse para beneficiar a la familia. El cónyuge o la sociedad de gananciales que niegue responsabilidad tiene la carga de la prueba para demostrar lo contrario. Íd.

En la presente controversia, el señor López Cámara firmó un pagaré para garantizar el monto por el que transó El Legado con Cruz Consulting como resultado de varios contratos de servicio otorgados entre esas partes. La deuda contraída por el señor López Cámara al firmar el pagaré fue en su carácter personal. Al negar responsabilidad tanto personal como de la sociedad legal

de gananciales compuesta por él y la señora Matos, debía demostrar que la deuda no era de beneficio para la familia. WRC Properties, Inc. v. Santana, supra. Los peticionarios no pusieron a este Tribunal en posición de hacer esa determinación. Es decir, no derrotaron la presunción de que la deuda era beneficiosa para la familia. Íd. Una mera alegación negando que la sociedad legal de gananciales se benefició de la obligación contraída por el cónyuge no es suficiente. Por lo tanto, la firma del señor López Cámara obligó también a su sociedad legal de gananciales.

V

Por todo lo anterior, confirmaría el dictamen del Tribunal de Apelaciones a los efectos de que el señor López Cámara no firmó el pagaré en representación de El Legado y es responsable, junto con la sociedad legal de gananciales compuesta por él y la señora Matos, del pago de la deuda en su carácter personal.


RAFAEL L. MARTÍNEZ TORRES
Juez Asociado